# Harrison, Harrison & Associates, Ltd.

65 BROADWAY, 7th Floor
NEW YORK, NY, 10006
DIRECT DIAL (888) 239-4410
FAX (718) 799-9171
nycotlaw@gmail.com

Address all mail to:
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701

September 4, 2018

VIA ECF

Honorable Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Svetlova et al. v. Personal Touch Home Care, Inc. et. al.*
       <u>17-cv-00860 (LB)</u>

Dear Judge Bloom:

We represent the two plaintiffs — Valentyna Svetlova and Vera Shchuchinova (collectively, "Plaintiffs") — in the above-referenced matter. As per this Court's August 10th Order, the parties in this case respectfully request that the Court approve the two Settlement Agreements entered into between the parties in this matter, copies of which are attached hereto as Exhibits "1" and "2" (the "Agreements"), and determine the terms of the settlement to be final, fair, reasonable, adequate, and binding on the parties.

## SETTLEMENT TERMS

With the assistance of mediator Martin Scheinman, Esq., this case settled for a total of $63,500.00 (the "Settlement Amount"). The terms of the Agreements provide that in exchange for general releases from both Plaintiffs, Defendants will pay Plaintiffs a total of $47,000.00 – with Plaintiff Svetlova receiving $28,000.00 and Plaintiff Shchuchinova receiving $19,000.00[1], exclusive of attorney's fees and disbursements. Attorneys' fees total $16,000.00 - $14,000.00 of which is payable to Plaintiffs' counsel's firm and $2,000.00 of which is payable to counsel for 1199 SEIU United Healthcare Workers East ("1199 SEIU"), counsel for the Plaintiffs' Union who was made a party to this matter once it was sent to arbitration.

---

[1] Plaintiffs agreed to a roughly 60/40% percent split in favor of Plaintiff Svetlova – in accordance with the approximate value of their respective claims.

The Agreement reflects a compromise between the Plaintiffs and the Defendants. While Plaintiffs could have possibly received more money had they proceeded to and won at trial[2], Plaintiffs agreed to the Settlement Amount, and believe it to be a fair and reasonable compromise, because, in addition to receiving their money much sooner, and not having to wait months or years, Plaintiffs could not afford to take the risk that they may lose at trial.

In addition, there were other risks involved in continuing to trial. One risk with proceeding to trial was that Plaintiffs were subject to an arbitration agreement that required them to arbitrate their claims in secret arbitration (without any right of appeal). Defendants' counsel also informed Plaintiffs' counsel that Defendants had multiple witnesses (including Plaintiffs' former case manager, at least one former co-worker who worked with the same patient as Plaintiffs, and family members of their former patient) who were willing to testify against Plaintiffs at the arbitration hearing – thus heightening the risks that Plaintiffs may not be believed and that they could lose at trial. Moreover, because neither side had proper records of the claimed off-the-clock work, the amount of any overtime and unpaid wages found to be owed to Plaintiffs may be less than their estimated unpaid wages and/or the Settlement Amount.

Another factor involved in Plaintiffs' decision to settle this suit was because they wanted their payments sooner, rather than having to wait many months or several years for payment. Plaintiffs also wished to forego the hassle <u>and</u> expense of proceeding through discovery, conferences, depositions, and trial. They also did not want to take time off for depositions, conferences, and trial.

Plaintiffs – and Defendants – thus believe that the Settlement Amount represents a fair and equitable compromise that allows them to proceed with their personal and work lives without the disruptions, inconveniences, and risks inherent in litigation.

## **ATTORNEYS' FEES & COSTS**

From the Settlement Amount of $63,500, $500.00 in costs (for the court filing fee and process server) will be reimbursed and $16,000.00 (approximately 25%) is allocated for Plaintiffs' counsel's - and 1199 SEIU's - attorneys' fees. This amount is substantially less than the one-third contingency agreed upon by Plaintiffs in their retainer agreements and which is regularly approved in this circuit in FLSA and NYLL cases. *See Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 (NGG)(MDG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) ("one-third contingency fees [] are commonly accepted in the Second Circuit in FLSA cases."); *Kochilas v. Nat'l Merch. Servs., Inc.*, No. 1:14-CV-00311 (LB), 2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) (awarding 33% of $60,000 in FLSA and NYLL case, and stating that the "percentage-of-recovery method . . . is consistent with the trend in this Circuit."); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09-CV-3043 (PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) (awarding 32.9% of the settlement amount in FLSA and NYLL case.); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 13 CV 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y., Sept. 19, 2013)("This fee arrangement [of one third of the settlement amount plus costs] is routinely

---

[2] The Settlement Amount equals approximately thirty-six percent (36%) of the estimated unpaid wages (approximately $175,000.00) that Plaintiffs could have recovered had they won at trial.

approved by courts in this Circuit."); *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 179 (E.D.N.Y. 2012) (Go, M.J.) (finding "Class counsel's requested fee, 33% of the settlement, reasonable under the circumstances of this case and 'well within the range accepted by courts in this Circuit.'").

      In light of the above, Plaintiffs respectfully request that this Court approve the parties' Agreements and that the Court discontinue this case with prejudice. We thank the Court for its attention to this matter.

                                        Respectfully submitted,
                                        <u>/S/ DAVID HARRISON</u>
                                        David Harrison

cc: All Counsel of Record (VIA ECF)

# EXHIBIT "1"

## AGREEMENT AND GENERAL RELEASE ("Agreement")

Personal Touch Home Care of N.Y., Inc., ("Employer"), 1199SEIU United Healthcare Workers East ("1199"), and Valentyna Svetlova, her heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Employment.** Employee agrees that she will not seek employment with Employer at any time in the future.

2. **Consideration.** In consideration for Employee signing this Agreement, not revoking it during the revocation period set forth below, and complying with its terms, Employer agrees:

   a. to pay Employee $11,200.00 less lawful deductions, for alleged unpaid wages. Such payment shall be made within 30 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   b. to pay Employee $16,800.00 for alleged liquidated damages, statutory penalties, and interest. An IRS form 1099 (box 3 – other income) shall be issued to Employee in this amount. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   c. to pay 1199SEIU United Healthcare Workers East $1,000 as attorneys' fees. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below; and

   d. to pay Harrison, Harrison & Associates $7,250 as attorneys' fees. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   e. The checks set forth in Paragraphs 2(a), 2(b), and 2(d) herein shall be mailed via overnight mail to Plaintiffs' counsel of record, Harrison, Harrison & Associates, Ltd., David Harrison, Esq., 110 State Highway 35, Suite 10, Red Bank, New Jersey 07701 on or before the deadlines set forth above.

   f. The check set forth in Paragraph 2(c) herein shall be mailed via overnight mail to the Union's counsel of record, Levy Ratner, PC, Laureve Blackstone, Esq., 80 8th Ave., 8th Floor, New York, NY 10010 on or before the deadline set forth above.

3. **No Consideration Absent Employee's Material Representations and Promises.** Employee understands and agrees that Employee would not receive the consideration specified in paragraph "2" above, except for Employee's execution and non-revocation of this Agreement and the fulfillment of the promises contained herein.

4. **General Release, Claims Not Released.**

   a. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, Employer, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and its current and former

1

employees, officers, directors, Members of the Board of Directors, and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964, as amended;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Equal Pay Act of 1963;
- The Age Discrimination in Employment Act of 1967;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Immigration Reform and Control Act, as amended;
- The Americans with Disabilities Act of 1990, as amended;
- The Family & Medical Leave Act of 1993, as amended;
- The Fair Credit Reporting Act;
- The Workers Adjustment and Retraining Notification Act, as amended;
- The Occupational Safety and Health Act, as amended;
- The Sarbanes-Oxley Act of 2002;
- The New York State Executive Law § 296, the New York Human Rights Law, as amended;
- The New York City Administrative Code;
- The New York Labor Law, as amended;
- The New York State Minimum Wage Law, as amended;
- The New York State Worker Adjustment and Retraining Notification Act;
- New York Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim, as amended;
- Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;
- Any public policy, contract, tort, or common law; or
- Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

b. **Claims Not Released**. Employee is not waiving rights Employee may have to: (a) Employee's vested accrued employee benefits under Employer's health or retirement benefit plans as of May 11, 2018; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement.

c. **Governmental Agencies**. Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made to such an anti-

2

discrimination agency, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

        d. **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

    5. **Withdrawal of Arbitration.** Employee agrees that 1199 shall withdraw with prejudice the Demand for Arbitration currently pending before Arbitrator Martin Scheinman, and that no further actions will be taken on her behalf by 1199, except with regard to enforcement of the Agreement.

    6. **Acknowledgments and Affirmations.** Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, other than the demand for arbitration which shall be withdrawn.

    Employee affirms that she has been adequately represented by 1199.

    Employee further affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws, and that Employee has no known workplace injuries or occupational diseases.

    7. **Limited Disclosure.** Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, except to Employee's spouse or child, tax advisor, her attorneys and Valentyna Sveltova.

    8. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

    9. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

    10. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

    11. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.

EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DATE EMPLOYEE SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO THE ATTENTION OF RONALD SPIELBERGER AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE PERSONALLY DELIVERED TO MR. SPIELBERGER OR His DESIGNEE, OR MAILED TO MR. SPIELBERGER AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

Valentyna Svetlova

_[signature]_

Date: 05/22/18

1199SEIU United Healthcare Workers East

By: _[signature]_

4820-8166-1286, v. 1

Vladimir Fortunny, VP

Personal Touch Home Care, of N.Y., Inc.

By: _[signature]_
Robert Caione, CEO

Date: 5/29/18

4

# EXHIBIT "2"

## AGREEMENT AND GENERAL RELEASE ("Agreement")

Personal Touch Home Care of N.Y., Inc., ("Employer"), 1199SEIU United Healthcare Workers East ("1199"), and Vera Shchuchinova, her heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Last Day of Employment.** Employee resigns her employment with Employer effective May 11, 2018 ("Separation Date"). Employee agrees that she will not seek employment with Employer at any time in the future.

2. **Consideration.** In consideration for Employee signing this Agreement, not revoking it during the revocation period set forth below, and complying with its terms, Employer agrees:

   a. to pay Employee $7,600.00 less lawful deductions, for alleged unpaid wages. Such payment shall be made within 30 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   b. to pay Employee $11,400.00 for alleged liquidated damages, statutory penalties, and interest. An IRS form 1099 (box 3 – other income) shall be issued to Employee in this amount. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   c. to pay 1199SEIU United Healthcare Workers East $1,000 as attorneys' fees. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below; and

   d. to pay Harrison, Harrison & Associates $7,250 as attorneys' fees. Such payment shall be made 60 days following the Employer's receipt of this Agreement appropriately signed and dated by Employee and the expiration of the revocation period set forth below;

   e. The checks set forth in Paragraphs 2(a), 2(b), and 2(d) herein shall be mailed via overnight mail to Plaintiffs' counsel of record, Harrison, Harrison & Associates, Ltd., David Harrison, Esq., 110 State Highway 35, Suite 10, Red Bank, New Jersey 07701 on or before the deadlines set forth above.

   f. The check set forth in Paragraph 2(c) herein shall be mailed via overnight mail to the Union's counsel of record, Levy Ratner, PC, Laureve Blackstone, Esq., 80 8th Ave., 8th Floor, New York, NY 10010 on or before the deadline set forth above.

3. **No Consideration Absent Employee's Material Representations and Promises.** Employee understands and agrees that Employee would not receive the consideration specified in paragraph "2" above, except for Employee's execution and non-revocation of this Agreement and the fulfillment of the promises contained herein.

4. **General Release, Claims Not Released.**

   a. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, Employer, its parent corporation, affiliates,

1

subsidiaries, divisions, predecessors, insurers, successors and assigns, and its current and former employees, officers, directors, Members of the Board of Directors, and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964, as amended;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Equal Pay Act of 1963;
- The Age Discrimination in Employment Act of 1967;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Immigration Reform and Control Act, as amended;
- The Americans with Disabilities Act of 1990, as amended;
- The Family & Medical Leave Act of 1993, as amended;
- The Fair Credit Reporting Act;
- The Workers Adjustment and Retraining Notification Act, as amended;
- The Occupational Safety and Health Act, as amended;
- The Sarbanes-Oxley Act of 2002;
- The New York State Executive Law § 296, the New York Human Rights Law, as amended;
- The New York City Administrative Code;
- The New York Labor Law, as amended;
- The New York State Minimum Wage Law, as amended;
- The New York State Worker Adjustment and Retraining Notification Act;
- New York Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim, as amended;
- Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;
- Any public policy, contract, tort, or common law; or
- Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

b. **Claims Not Released.** Employee is not waiving rights Employee may have to: (a) Employee's vested accrued employee benefits under Employer's health or retirement benefit plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement.

c. **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum

2

extent permitted by law, Employee agrees that if such an administrative claim is made to such an anti-discrimination agency, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

   d. **Collective/Class Action Waiver**. If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

   5. **Withdrawal of Arbitration.** Employee agrees that 1199 shall withdraw with prejudice the Demand for Arbitration currently pending before Arbitrator Martin Scheinman, and that no further actions will be taken on her behalf by 1199, except with regard to enforcement of the Agreement.

   6. **Acknowledgments and Affirmations**. Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, other than the demand for arbitration which shall be withdrawn.

   Employee affirms that she has been adequately represented by 1199.

   Employee further affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws, and that Employee has no known workplace injuries or occupational diseases.

   7. **Limited Disclosure**. Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, except to Employee's spouse or child, tax advisor, her attorneys and Valentyna Sveltova.

   8. **Governing Law and Interpretation**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

   9. **Nonadmission of Wrongdoing**. The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

   10. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

   11. **Entire Agreement**. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.

EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DATE EMPLOYEE SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO THE ATTENTION OF RONALD SPIELBERGER AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE PERSONALLY DELIVERED TO MR. SPIELBERGER OR His DESIGNEE, OR MAILED TO MR. SPIELBERGER AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

Vera Shuchuchinova

*[signature]*

Date: 05.22.18

1199SEIU United Healthcare Workers East

By: *[signature]*
Vladimir Fortunny, VP

Personal Touch Home Care, of N.Y., Inc.

By: *[signature]*
Robert Caione, CEO

Date: 5/29/18

4